

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 28, 2017**

United States Bankruptcy Judge

_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CHC GROUP LT.D, *et al.*, | § | BANKR. CASE NO. 16-31854-BJH |
| | § | (CHAPTER 11) |
| DEBTORS. | § | |
| _____ | § | |
| | § | |
| ECN CAPITAL (AVIATION) CORP., | § | CASE NO. 3:17-cv-00075-C |
| | § | |
| PLAINTIFF, | § | ADV. PROC. NO. 16-3151-BJH |
| v. | § | |
| | § | Related to ECF No. 24 |
| AIRBUS HELICOPTERS SAS, | § | |
| | § | |
| DEFENDANT. | § | |
| | § | |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEFENDANT AIRBUS HELICOPTERS, S.A.S.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION, AND ON THE GROUNDS OF FORUM NON CONVENIENS

Before the Bankruptcy Court is the motion [AP[1] No. 24] (the "**Motion to Dismiss**")[2] filed by Defendant Airbus Helicopters S.A.S. ("**Airbus**"),[3] requesting that the above-captioned adversary proceeding (the "**Adversary Proceeding**") be dismissed for lack of both subject matter and personal jurisdiction and on the grounds of forum non conveniens. Alternatively, Airbus requests that the Bankruptcy Court permissively abstain from hearing the dispute. For the reasons explained below, the Bankruptcy Court concludes that the Motion to Dismiss should be granted; however, it lacks the constitutional authority to enter a final order granting the requested relief. Accordingly, it respectfully submits these Proposed Findings of Fact and Conclusions of Law to the District Court for consideration in accordance with 28 U.S.C. § 157(c)(1).

## I. PROPOSED FINDINGS OF FACT[4]

Plaintiff ECN Capital (Aviation) Corp. ("**ECN**"), an Ontario corporation, is a commercial financing business with its headquarters located in Toronto, Canada. Complaint ¶ 5. It provides

---

[1] Citations to "AP No." refer to the docket number in the Adversary Proceeding (16-3151), while citations to "BC No." refer to the docket number in the Bankruptcy Case (16-31854).

[2] On the same day that Airbus filed the Motion to Dismiss, it also filed a request that the District Court withdraw its referral of the Adversary Proceeding to the Bankruptcy Court [AP No. 23] (the "**Motion to Withdraw Reference**"). In its Report and Recommendation with respect to the Motion to Withdraw Reference, which the Bankruptcy Court issued concurrently with its Proposed Findings of Fact and Conclusions of Law, the Bankruptcy Court recommends that, should this Court not dismiss the Adversary Proceeding or abstain, it immediately withdraw the reference.

[3] The related pleadings include: (i) Airbus's amended brief in support of the Motion to Dismiss [AP No. 32] ("**Airbus's Original Brief**"), (ii) Plaintiff's Opposition to the Defendant's Motion to Dismiss [AP No. 63] ("**ECN's Original Brief**"), (iii) Plaintiff's Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss [AP No. 74] ("**ECN's First Supplemental Brief**"), (iv) Defendant's Supplemental Brief in Support of Motion to Dismiss for Lack of Subject Matter and Personal Jurisdiction, and on the Grounds of Forum Non Conveniens [AP No. 75] ("**Airbus's First Supplemental Brief**"), (v) Plaintiff's Second Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss [AP No. 78] ("**ECN Second Supplemental Brief**"), and (vi) Airbus's Supplemental (Corrective) Reply Brief [AP No. 81, as corrected by AP No. 82] ("**Airbus's Second Supplemental Brief**").

[4] Any finding of fact more properly considered a conclusion of law, or any conclusion of law more properly considered a finding of fact, should be so considered.

commercial aviation financing to customers in the transportation and energy sectors, among others, throughout Canada and the United States. *Id.*

Defendant Airbus is a French company organized and existing under the laws of France with its principal place of business in Marignane, France. Airbus Ex. A (Declaration of Michel Gouraud) ¶ 3. It designs, manufactures, markets, and sells aircraft, including two models of helicopters sold under the name "Super Puma"—the Eurocopter EC225 (the "**EC225**") and the Eurocopter AS332 L2 (the "**AS332 L2**"). Complaint ¶ 1; ECN Ex. A ¶¶ 3, 6.

ECN currently owns five Super Puma helicopters manufactured by Airbus—one EC225 and four AS332 L2s (collectively, the "**Helicopters**"). Complaint ¶ 4. The Helicopters were initially purchased in France by two foreign companies—CHC Scotia Limited and CHC Leasing (Ireland) Limited. Airbus Ex. A ¶¶ 6-7. Although the record does not disclose the chain of ownership within the CHC group of companies,[5] the CHC-affiliated entity that last owned the Helicopters was CHC Helicopters (Barbados) SRL ("**CHC (Barbados)**"). Complaint ¶ 12. It was CHC (Barbados) that sold the Helicopters to ECN as part of a sale-leaseback transaction whereby ECN purchased the Helicopters and leased them back to CHC (Barbados) for sublease and operation (the "**ECN Leases**"). *Id.* ¶ 12. The ECN Leases were guaranteed by CHC Helicopter S.A., CHC Helicopter Holding S.A.R.L., 6922767 Holding SARL, and Heli-One Leasing, ULC (the "**ECN Lease Guarantors**"). *Id.* ¶ 42; *see* Proofs of Claim Nos. 543, 545, 549, 556, and 575.[6]

---

[5] As explained more fully herein, forty-three companies within the CHC group filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. *See infra* at 4.

[6] Kurtzman Carson Consultants, the Bankruptcy Court-approved claims agent, maintains the Proofs of Claim filed in the Bankruptcy Case. The claims register may be viewed at http://www.kccllc.net/chc/register.

On April 29, 2016, an Airbus-manufactured Super Puma EC225 leased by CHC (Barbados) crashed near Turøy, Norway, killing all 13 individuals on board the aircraft.  Complaint ¶ 2.  As a result of the crash and subsequent investigation, civil aviation authorities in the United States, Europe, Norway, and the United Kingdom prohibited the flight and/or commercial use of any EC225 or AS332 L2, including the Helicopters.  *Id.*  ECN, however, did not own the EC225 that crashed in Norway.  Hr'g Tr. (2/6/17) 24:19-23 (Katz) [AP No. 73].[7]

On May 5, 2015 (the "**Petition Date**"), CHC Group, Ltd. and 42 of its direct and indirect subsidiaries (collectively, the "**Debtors**") filed for protection under Chapter 11 of the Bankruptcy Code.  Complaint ¶ 37.  The 43 cases are jointly administered under the lead case of *In re CHC Group, Ltd.,* 16-31854-11 (collectively, the "**Bankruptcy Case**").[8]  Among the Debtor entities are CHC (Barbados) and the ECN Lease Guarantors.  In addition to the Helicopters, as of the Petition Date the Debtors leased Super Puma helicopters from various other parties and owned six Super Puma helicopters outright.  Declaration of David W. Fowkes in Support of Third Amended Joint Chapter 11 Plan of CHC Group Ltd. and its Affiliated Debtors [BC No. 1643] ¶¶ 10, 12.

During the Bankruptcy Case, CHC (Barbados) rejected the ECN Leases in accordance with § 365 of the Bankruptcy Code.  *Id.* ¶ 12.  Based on the rejections, ECN filed the following Proofs of Claim in the Bankruptcy Case, each for "[n]o less than [$] 94,070,389" (collectively, the "**ECN Proofs of Claim**"):

---

[7] Citations to hearing transcripts shall take the form of "Hr'g Tr. (date) pg:line-line (speaker)."

[8] As explained further herein, the Debtors' plan of reorganization was confirmed by Order of the Bankruptcy Court on March 3, 2017 and has now gone effective.  *See infra* at 39-40.

**Proposed Findings of Fact and Conclusions of Law**                                                                 **4**

| Debtor | Case No. | Claim No. | Filing Entity | Basis for Claim |
|---|---|---|---|---|
| CHC Helicopters (Barbados) SRL | 16-31867 | 543 | Element Capital Corporation (n/k/a ECN Capital (Aviation) Corp.)[9] | "Obligations in connection with rejected and/or restructured lease" |
| CHC Helicopter S.A. | 16-31863 | 545 | Element Capital Corporation | "Obligations in connection with a lease pursuant to guarantee" |
| CHC Helicopter Holding S.A.R.L. | 16-31875 | 549 | Element Capital Corporation | "Obligations in connection with a lease pursuant to guarantee" |
| 6922767 Holding SARL | 16-31855 | 556 | Element Capital Corporation | "Obligations in connection with a lease pursuant to guarantee" |
| Heli-One Leasing, ULC | 16-31891 | 575 | Element Capital Corporation | "Obligations in connection with a lease pursuant to guarantee" |

ECN filed the Complaint on November 17, 2016, which contains the following counts: (i) Negligence, (ii) Strict Products Liability–Manufacturing Defect, (iii) Strict Products Liability–Design Defect, (iv) Strict Products Liability–Inadequate Warning, (v) Breach of Implied Warranty of Merchantability, (vi) Negligent Misrepresentation, and (vii) Fraud. Complaint ¶¶ 19-111. The Complaint also requests punitive and exemplary damages, an award of attorneys' fees and costs, and pre- and post-judgment interest. *Id.* at 30 (Prayer for Relief).[10]

---

[9] Complaint at 1.

[10] These claims are not set forth in numbered counts, but appear in the Prayer.

**Proposed Findings of Fact and Conclusions of Law**          **5**

## II. PROPOSED CONCLUSIONS OF LAW

### A. Subject Matter Jurisdiction

#### 1. The Relevant Standard for Ruling on a Federal Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A challenge to a bankruptcy court's subject matter jurisdiction under Federal Rule of Civil Procedure ("**Federal Rule**") 12(b)(1), as made applicable by Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 7012, can be mounted as either a facial or factual challenge. *MC Comm'n Serv., Inc. v. Arizona Tel. Co. (In re Intramta Switched Access Charge Litig.),* 158 F.Supp.3d 571, 574 (N.D. Tex. 2015). When a party files a Federal Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Federal Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted). If, however, the defendant supports the motion with affidavits, testimony, or other evidentiary materials, the attack is factual and the burden shifts to the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence. *Id.*

Although Airbus submitted evidence in support of the Motion to Dismiss, the evidence relates solely to its challenge under Federal Rule 12(b)(2) for lack of personal jurisdiction, which is addressed below. Thus, the Motion to Dismiss is a facial challenge to subject matter jurisdiction under Federal Rule 12(b)(1). Before turning to the allegations in the Complaint, however, a brief overview of "related to" jurisdiction is helpful to understanding this Court's analysis.

### 2. Related To Jurisdiction Generally

The District Court for the Northern District of Texas has subject matter jurisdiction over bankruptcy cases and proceedings under 28 U.S.C. § 1334. Although bankruptcy courts do not have independent subject matter jurisdiction over bankruptcy cases and proceedings, 28 U.S.C. § 151 grants bankruptcy courts the power to exercise certain "authority conferred" upon the district courts by title 28. Under 28 U.S.C. § 157, the district courts may refer bankruptcy cases and proceedings to the bankruptcy courts for either entry of a final judgment (core proceedings) or proposed findings and conclusions (noncore, related-to proceedings). Thus, the Bankruptcy Court exercises authority over the Bankruptcy Case and the Adversary Proceeding pursuant to the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in this district on August 3, 1984.

28 U.S.C. § 1334(b) lists three types of proceedings over which the District Court has jurisdiction – those "arising under title 11," those "arising in" a case under title 11, and those "related to" a case under title 11. The classification of a proceeding under § 1334 depends on the connection of the proceeding to the bankruptcy case. "Arising under" jurisdiction involves "causes of action created or determined by a statutory provision of title 11." *Faulkner v. Eagle View Capital Mgt. (In re The Heritage Org., L.L.C.)*, 454 B.R. 353, 360 (Bankr. N.D. Tex. 2011) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987)). "Arising in" jurisdiction is "not based on a right expressly created by title 11, but is based on claims that have no existence outside of bankruptcy." *Faulkner*, 454 B.R. at 360 (citing *Wood*, 825 F.2d at 97). "Arising under" and "arising in" proceedings are "core" proceedings. 28 U.S.C. § 157(b); *Stern v. Marshall,* 564 U.S. 462, 476 (2011); *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.),* 301 F.3d 296, 304 (5th Cir. 2002).

In comparison, "related to" jurisdiction exists if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)); *see also U.S. Brass*, 301 F.3d at 304. A claim is related to a bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)." *Kimpel v. Meyrowitz (In re Meyrowitz)*, 2010 WL 5292066, at *5 (Bankr. N.D. Tex. Dec. 20, 2010) (citations omitted). "That state law may affect a proceeding's resolution cannot be the sole basis by which a proceeding is excluded from the otherwise large net cast by 'related to' jurisdiction." *Hartley v. Wells Fargo Bank, N.A. (In re Talsma)*, 509 B.R. 535, 542 (Bankr. N.D. Tex. 2014) (citing 28 U.S.C. § 157(b)(3)). Proceedings that involve merely "related to" jurisdiction and do not otherwise arise under the Bankruptcy Code or arise in a bankruptcy case are "non-core." *Faulkner*, 454 B.R. at 360. In such an instance, a bankruptcy court may not issue a final order adjudicating the claims without the parties' consent. 28 U.S.C. § 157(c).

With this predicate in mind, the Court turns to the allegations in the Complaint.

### 3. The Court has Related To Jurisdiction Over the Adversary Proceeding

According to ECN's Original Brief [AP No. 63], the paragraphs in its Complaint relevant to subject matter jurisdiction are 8-12 and 40-43.[11] A review of these paragraphs, however, shows that only paragraphs 42 and 43 contain arguably non-conclusory allegations relevant to subject matter jurisdiction.[12] Those paragraphs allege the following:

---

[11] *See* ECN's Original Brief [AP No. 63] at 9.

[12] Paragraphs 8 and 9 are comprised of conclusory allegations that the Bankruptcy Court has subject matter jurisdiction. A court need not accept conclusory allegations as true when ruling on a challenge to its subject matter jurisdiction. *Beene v. Aramark Healthcare Support Serv., Inc.*, 2007 WL 1468705, at *2 (N.D. Tex. May 17, 2007) (the court need not strain to find inferences favorable to the plaintiffs nor accept conclusory allegations, unwarranted

42. As a result of the CHC Debtors' rejection of their leases with ECN Capital, ECN Capital filed Proofs of Claim Nos. 543, 545, 549, 556, and 575 in the CHC Bankruptcy Cases against certain of the CHC Debtors seeking over $94 million from each such CHC Debtor. Other entities subject to lease rejections by the CHC Debtors filed similar proofs of claim. To the extent that ECN Capital recovers damages against Airbus through this action, the amount of ECN Capital's claims against the CHC Debtors will be reduced by ECN Capital's recovery. Similarly, if other entities subject to lease rejections by the CHC Debtors obtain damages from Airbus on the basis of Airbus's liability in this action, their claims against the CHC Debtors will be reduced by their recovery. Accordingly, the outcome of Plaintiff's claims in this action will: (a) alter the rights, obligations, and choices of action of creditors against the CHC Debtors; (b) alter the rights, obligations, and choices of action by the CHC Debtors against Airbus; (c) impact the CHC Debtors' estates; and (d) have an effect on the administration of the CHC Debtors' estates.

43. On information and belief, in addition to the Super Pumas for which the CHC Debtors rejected leases in the CHC Bankruptcy Cases, the CHC Debtors own and/or have owned other Super Puma EC225s and/or Super Puma AS332 L2s as well. The CHC Debtors thus could stand to recover damages directly from Airbus for Airbus's negligence, defective design, defective manufacturing, failure to warn, violation of implied warranty of merchantability, negligent misrepresentation, and/or fraud, which recovery would accrue to the benefit of the CHC Debtors' estates.

In its Original Brief, ECN elaborates on its allegations in paragraphs 42(b)-(c) and 43 by explaining that if, "for example, ECN Capital succeeds on any of its claims, Airbus could be liable to the Debtors on collateral estoppel grounds for claims arising from the April 2016 crash and subsequent grounding—which claims the Debtors have expressly preserved [under their plan of reorganization] and which involve substantially similar facts and circumstances to those at issue here." ECN's Original Brief [AP No. 63] at 2.

---

deductions, or legal conclusions). Paragraph 10 alleges that the Bankruptcy Court has supplemental jurisdiction over ECN's claims. However, it is the District Court, not the Bankruptcy Court, that would try the Adversary Proceeding, making this argument moot. Paragraphs 11 and 40 contain allegations regarding personal jurisdiction, while paragraph 12 addresses venue. Finally, paragraph 40 only addresses CHC (Barbados)'s rejection of the ECN Leases.

**Proposed Findings of Fact and Conclusions of Law** **9**

Airbus, however, argues that the Bankruptcy Court must dismiss the Adversary Proceeding because it is a non-core proceeding that will have no effect on the Bankruptcy Case. Airbus's Original Brief [AP No. 32] at 1. According to Airbus:

> ECN's action does not involve claims against the CHC Debtors and does not involve their estates' property. The helicopters are owned by ECN, and the leases have already been rejected by the CHC Debtors. Whether ECN can recover from [Airbus] for its own, separate alleged economic loss caused by the groundings will have no effect on the Debtors' estates. The sources of damages to ECN in the proceedings are completely separate – rejected leases (bankruptcy) versus the grounding (adversary). Moreover, to the extent ECN recovers damages from [Airbus] in this lawsuit, that money would go to ECN, not the CHC Debtors.

*Id.* at 7-8. Simply put, Airbus believes that ECN's arguments are far too tenuous to support related to jurisdiction. Although the Court agrees that the Adversary Proceeding's potential effect on the bankruptcy estates is tenuous, that effect is still "conceivable" and thus sufficient to confer subject matter jurisdiction, as the Court will now explain.

In its briefs, ECN generically uses the term "collateral estoppel" in describing the conceivable effect that the Adversary Proceeding could have on the bankruptcy estates, without explaining whether it is referring to claim or issue preclusion. Thus, the Court must analyze both. For claim preclusion to apply,

> [f]irst, the parties in a later action must be identical to (or at least be in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits.

*U.S. v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994). Here, ECN is unable to prove the first element because the Debtors are not a party to the Adversary Proceeding nor is there any allegation that they are in privity with ECN. Thus, claim preclusion could not apply under these facts.

Issue preclusion, however, could apply to the facts as alleged by ECN. As previously explained in *In re Wyly*, issue preclusion binds a party to the determination of an issue that was litigated in a prior judgment if—

> [f]irst, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair.

*In re Wyly*, 2015 WL 5042756, at *6 (Bankr. N.D. Tex. Aug. 25, 2015) (quotations and citations omitted). As explained by the Fifth Circuit:

> The differences between claim preclusion and issue preclusion are significant. Waiver is not a motivating principle behind issue preclusion. Instead, courts reason that if another court has already furnished a trustworthy determination of a given issue of fact or law, a party that has already litigated that issue should not be allowed to attack that determination in a second action. Moreover, under issue preclusion, unlike claim preclusion, the subject matter of the later suit need not have any relationship to the subject matter of the prior suit.

*Shanbaum,* 10 F.3d at 311.

As previously described, ECN has sued Airbus alleging various negligence and products liability claims arising from damages associated with its ownership of the Helicopters that were grounded after the 2016 crash. These are the same types of claims likely held by certain of the Debtors that also own Super Puma helicopters that were similarly grounded. If ECN receives a ruling in the Adversary Proceeding that a specific part was defective, that Airbus knew of the defect, or similar rulings encompassed in negligence and/or products liability claims, the applicable Debtor could likely rely on issue preclusion in a subsequent lawsuit brought against Airbus. Although the application of issue preclusion involves a hypothetical scenario at this

point,[13] ECN and the applicable Debtors each hold the right to bring these type of claims against Airbus flowing from the crash and subsequent grounding of the Super Puma helicopters, which means the application of issue preclusion *could* have a *conceivable* effect on the applicable bankruptcy estates by altering the applicable Debtor's rights, options, and freedom of action, thus meeting the very broad definition of related to jurisdiction applicable in the Fifth Circuit. Accordingly, the Court concludes that the Adversary Proceeding is related to the Bankruptcy Case.[14]

### B.    Personal Jurisdiction

#### 1.    The Relevant Standard for Ruling on a Federal Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Id.*  Here, Airbus relied on documents outside of the Complaint to challenge personal jurisdiction, which ultimately resulted in the parties undertaking discovery and the Bankruptcy Court holding an evidentiary hearing on the Motion to Dismiss on February 28, 2017 (the "**Hearing**").[15]  Thus, ECN must show, by a preponderance of the evidence, that the Court has

---

[13] This is because the applicable Debtors have not sued Airbus and it is unknown if they will ever sue Airbus bringing these same or substantially similar claims.

[14] On March 3, 2017, this Court entered an order [BC No. 1791] approving a settlement between the Debtors and ECN that awarded ECN "separate and distinct stipulated, allowed general unsecured non-priority pre-petition claims" in the amount of $85,700,000 against each of CHC (Barbados) and the ECN Lease Guarantors.  Because of this settlement, ECN's other argument, that its recovery in the Adversary Proceeding could reduce its claims against the estates, is moot.

[15] A copy of the Hearing transcript may be found at AP No. 86.

personal jurisdiction over Airbus. *Felch v. Transportes Lar–Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996).

When analyzing personal jurisdiction, a court must first consider whether a federal statute or rule defines the extent of its personal jurisdiction. *Smith v. Matias (In re IFS Fin. Corp.),* 2007 WL 2692237 (Bankr. S.D. Tex. Sept. 11, 2007) (citing *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 887 (Bankr. N.D. Ill. 2006)). Here, Bankruptcy Rule 7004(f) defines personal jurisdiction over defendants in an adversary proceeding, authorizing personal jurisdiction to the extent allowed by the Fifth Amendment Due Process clause. *Id.* (citing cases). Consequently, a bankruptcy court's personal jurisdiction is not affected by a state's long-arm statute or constitution. *Id.*

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant when: (i) the defendant has minimum contacts with the forum, and (ii) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Paz v. Brush Engineered Materials, Inc.,* 445 F.3d 809, 813 (5th Cir. 2006). Minimum contacts are required to preserve a defendant's Due Process right not to be brought into a forum without "fair warning" that prior conduct subjected them to that forum's jurisdiction. *Burger King Corp.,* 471 U.S. at 471–72. The plaintiff bears the burden of establishing minimum contacts. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). If successful, the burden then shifts to the defendant to establish that the exercise of jurisdiction would be unfair or unreasonable. *Id*.

The minimum-contacts analysis used in diversity cases is applied to a foreign defendant in bankruptcy court adversary proceedings based on federal law, with one exception. Instead of

looking only at the defendant's contacts within the forum state, courts aggregate the defendant's contacts within the entire United States. *In re IFS Fin. Corp.*, 2007 WL 2692237, at *3; *Levey v. Hamilton (In re Teknek, LLC)*, 354 B.R. 181, 192 (Bankr. N.D. Ill. 2006).

The Supreme Court has rejected "talismanic jurisdiction formulas" to determine personal jurisdiction. *Burger King Corp.*, 471 U.S. at 485–86. However, the contacts must be "purposeful" as opposed to "fortuitous" or "attenuated," and the contacts must be significant enough that a reasonable person would foresee that their "conduct and connection with the forum State are such that he should reasonably anticipate being haled into the court there." *Id.* at 474 (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 299 (1980)).

A defendant's "minimum contacts" may give rise to either general personal jurisdiction or specific personal jurisdiction. A court with general personal jurisdiction over a non-forum defendant has jurisdiction to adjudicate any claim against that defendant, including claims that do not arise in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). A court may exercise general personal jurisdiction over any action brought against a defendant if the defendant's contacts with the forum state are "continuous and systematic." *Seiferth*, 472 F.3d at 271. When examining a general personal jurisdiction issue, courts consider the defendant's contacts occurring within the forum "over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc., v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996)).

Absent general personal jurisdiction, a court may still exercise limited specific personal jurisdiction over a defendant. Unlike general personal jurisdiction, specific personal jurisdiction does not extend to any claim against the non-forum defendant. Instead, specific personal

jurisdiction is limited to causes of action that arise from conduct that occurred in or was directed to the forum location. *Burger King Corp.*, 471 U.S. at 472-73 n.15.

Here, ECN has alleged that: (i) by participating in the Bankruptcy Case, Airbus has submitted itself to the personal jurisdiction of the Bankruptcy Court (and thus this Court) for ECN's allegedly related claims, and (ii) the Bankruptcy Court (and thus this Court) has specific personal jurisdiction over Airbus for purposes of hearing the Adversary Proceeding.[16]  The Court will address these in turn.

### 2.  This Court Lacks Specific Personal Jurisdiction Over Airbus

#### a.  Airbus Has Not Consented to Personal Jurisdiction in this Court

It is undisputed that Airbus has voluntarily participated in the Bankruptcy Case by, among other things: (i) filing a Notice of Appearance in which it describes itself as a party in interest to the Bankruptcy Case [BC Nos. 339, 1750], (ii) serving on the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee [BC No. 137], (iii) filing proofs of claim for goods and/or services provided to certain of the Debtors prior to the Petition Date [Claim Nos. 353, 365], and (iv) objecting to prior efforts by ECN to take a Bankruptcy Rule 2004 examination related to certain of the Debtors' potential claims against Airbus [BC No. 862]. Because of this, ECN argues that Airbus has submitted itself to the Bankruptcy Court's jurisdiction for any claim related to the proofs of claim that Airbus filed against certain of the Debtor's bankruptcy estates.  ECN's Original Brief [AP No. 63] at 17.

---

[16] ECN does not argue that this Court has general personal jurisdiction over Airbus independent of Airbus's alleged consent.  Hr'g Tr. (2/28/16) 45:21-22 (Flumenbaum) ("I don't believe we would have general jurisdiction but for [Airbus] coming into this Court.").

In support of this argument, ECN cites to various cases where courts have exercised jurisdiction in allegedly "similar circumstances." ECN Second Supplemental Brief [AP No. 78] at 10-13. ECN's cases, however, are clearly distinguishable. For example, ECN cites to *Kriegman v. Cooper (In re LLS American, LLC)*, 2012 WL 2564722, at *7 (Bankr. E.D. Wash. 2012) for the proposition that, by filing a proof of claim and participating in motion practice, a claimant has submitted itself to the bankruptcy court's jurisdiction for related claims. *Id.* at 10-11. *LLS*, however, has several distinguishing characteristics, including that (i) a bankruptcy trustee (asserting claims on behalf of the bankruptcy estate)[17] was the plaintiff, and (ii) the defendant had participated in the adversary proceeding *before* filing a motion to dismiss for lack of personal jurisdiction. *In re LLS American, LLC*, 2012 WL 2564722, at *3. Moreover, the *LLS* defendant's proof of claim was filed for money loaned to or investments in the debtor, and the adversary proceeding against it was for allegedly preferential transfers under 11 U.S.C. § 548 related to the debtor's Ponzi scheme. *Id.* at *4. Among other things,[18] the court in *LLS* relied on the nature of the claim and the adversary, coupled with 11 U.S.C. § 502(d),[19] to find that, by filing the proof of claim, the defendant had submitted to the court's personal jurisdiction. *Id.* at *5-7. ECN's other cases on this point are similarly distinguishable.

---

[17] Here, however, no Debtor claim is directly at issue. The claims pled in the Adversary Proceeding are claims of a non-debtor (ECN) against another non-debtor (Airbus).

[18] The *LLS* court also found that the defendant consented to the court's jurisdiction by previously filing and prosecuting a motion to withdraw reference. *Id.* at *7.

[19] 11 U.S.C. § 502(d) states, in relevant part, that "the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title."

Proposed Findings of Fact and Conclusions of Law                                        16

For example, *Securities Investor Protections Corp. v. Bernard L. Madoff Investment Securities, Inc.,* 460 B.R. 106 (S.D.N.Y. 2011) *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012), involved an avoidance action brought by a bankruptcy trustee, again asserting claims on behalf of the bankruptcy estate.  The court found that it had personal jurisdiction over the foreign defendant because, among other things,  (i) the foreign defendant had entered into and performed under an agreement with a New York choice of law clause, (ii) the foreign defendant's "investment manager" had an address in Connecticut, (iii) the foreign defendant directed investments to the United States and had engaged in a series of repeated transactions that intentionally channeled investor money into the debtor's Ponzi scheme in New York, and (iv) several of the trustee's claims arose out of or were related to the defendant's contacts with the United States such that it should reasonably have anticipated any adjudication of the transactions would take place in the United States.  *Id.* at 116-19.  Although the *Madoff* court took into consideration that the defendant had participated in the underlying bankruptcy case by filing a notice of appearance and attending hearings in New York through counsel, those actions were not the sole basis of its ruling.  *Id.* at 119.

In *Deak & Co., Inc. v. Ir. R.M.P Soedjono (In re Deak & Co., Inc.)*, 63 B.R. 442 (Bankr. S.D.N.Y. 1986), the debtor owned substantially all of the stock of a foreign bank ("**FOCO**").  Prepetition, the debtor had pledged 8,000 of those shares to a foreign entity ("**DAMA**").  After filing for bankruptcy, the debtor sought to sell its stock in FOCO free and clear of all liens, claims, and encumbrances, including those arising from the pledge to DAMA, on the basis that the pledge was the subject of a bona fide dispute under 11 U.S.C. § 363(f)(4).  *Id.* at 424-25.  Prior to the proposed sale, DAMA had filed a notice of appearance in the bankruptcy case, stating that it was "a party in interest and equity security holder in these proceedings."  *Id.* at 424.  Although DAMA

received notice of the proposed sale and its counsel attended the sale hearing, it filed no objection

to the sale. *Id.* at 424-25. The bankruptcy court ultimately approved the sale, which was "free and

clear of all liens, claims, pledges, and other encumbrances," with any such interests to attach to

the sale proceeds. *Id.* at 425.

After the bankruptcy court approved the sale, DAMA sought and obtained an ex parte

injunction from a Swiss court in Zurich restraining the debtor from transferring the FOCO shares

to the purchaser. *Id.* at 425-26. The debtor then commenced an adversary proceeding against

DAMA in the bankruptcy court seeking to set aside the pledge as a preference or fraudulent

conveyance. *Id.* at 426. In response, DAMA filed a motion to dismiss alleging, among other

things, that the bankruptcy court lacked personal jurisdiction over it. Although the bankruptcy

court held that DAMA had submitted itself to the bankruptcy court's personal jurisdiction by filing

a notice of appearance and participating in the bankruptcy case, that court clearly expressed its

concerns over DAMA's attempts to thwart the sale despite its knowledge of, and participation in,

the bankruptcy case. *Id.* at 432 ("DAMA's commencement of the Swiss action subsequent to

Deak's [bankruptcy] filing contravened the letter and spirit of § 362, and is a serious affront to this

court's jurisdiction by a party who had already appeared in this bankruptcy case"). Moreover, the

court specifically noted that DAMA's counsel appeared at the sale hearing, yet gave no indication

of DAMA's intent to challenge the sale:

> Furthermore, DAMA's appearance at the August 6, 1985 [sale] hearing, coupled
> with his failure to qualify statements made by Deak with regard to DAMA's
> interest, were further evidence of submission to this court's jurisdiction. Deak stated
> clearly at the hearing that the DAMA pledge was in dispute and that its validity
> would be determined at a later date. The present adversary proceeding seeks to
> determine precisely that matter. Deak further represented that it was "aware of no
> objection by any of the three lienors with respect to this prong of the application."
> Transcript, August 6, 1985, at 19. Specifically, Deak sought to have the liens, if
> their validity was established, to attach to the proceeds of the sale. DAMA had an

> opportunity but never voiced his objection to this court's jurisdiction which he easily could have done. Had an objection been interposed by DAMA at this juncture or by the other lienors, this court may well have structured the order it signed allowing the sale to go forward differently. DAMA's silence throughout estops him from now raising the issue of personal jurisdiction; his acts and non-acts have amounted to a legal submission to the jurisdiction of this court.

*Id.* at 432-33.

From this Court's perspective, ECN reads *Deak* too broadly. It does not stand for the general proposition that, by filing a notice of appearance and participating in a bankruptcy case, a creditor subjects itself to the personal jurisdiction of the bankruptcy court for all times or for all issues. Notably, the issues in *Deak* each involved the debtor's shares in FOCO. Here, however, ECN's claims in the Adversary Proceeding (negligence and products liability against Airbus, not any Debtor) and those reflected in Airbus's proofs of claims (prepetition goods and/or service provided to certain of the Debtors) are legally distinct and wholly unrelated.

ECN's remaining cases are similarly distinguishable. *See, e.g., Mobley v. Quality Lease and Rental Holdings, LLC (In re Quality Lease & Rental Holdings, LLC)*, 2016 WL 416961 (S.D. Tex. Feb. 1, 2016) (holding in relation to a jury demand that "[fi]ling a proof of claim brings a creditor within the equitable jurisdiction of a bankruptcy court and thereby waives the Seventh Amendment right to a jury trial on issues that are related to the proof of claim."); *Schwinn Plan Committee v. TI Reynolds 531 Limited (In re Schwinn Bicycle Co.)*, 182 B.R. 526 (N.D. Ill. 1995) (by filing proof of claim for outstanding invoices, foreign creditor subjected itself to personal jurisdiction in adversary proceeding brought by the Chapter 11 plan committee to recover preferential transfers); *Neese v. First Nat'l Bank of Grayson, Ky. (In re Neese)*, 12 B.R. 968 (W.D. Va. 1981) (by filing proofs of claim, defendants consented to the personal jurisdiction of the bankruptcy court in adversary to disallow those claims); *Glinka v. Abraham and Rose Co. Ltd.*,

199 B.R. 484 (Bankr. D. Vt. 1996) (bankruptcy trustee and debtor's primary secured creditor commenced adversary to set aside allegedly fraudulent transfers; court found that foreign defendant had waived any objection to personal jurisdiction by voluntarily intervening in the adversary proceeding and actively participating in the proceeding for an extended period of time without challenging the court's personal jurisdiction). Thus, Airbus's actions in the Bankruptcy Case are insufficient for this Court to conclude that it has consented to the Bankruptcy Court's (and thus this Court's) personal jurisdiction over it with regard to the claims pled against it by ECN in the Adversary Proceeding.

ECN next argues that Airbus filing proofs of claim in the Bankruptcy Case is the equivalent of Airbus filing a lawsuit in the Bankruptcy Court. And, in Texas, "[v]oluntarily filing a lawsuit in a jurisdiction is a purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when the lawsuits arise from the same general transaction." ECN's Original Brief [AP No. 63] at 18 & n.28, 29 (citing *Hess v. Bumbo Int'l Trust*, 954 F.Supp.2d 590, 597 (S.D. Tex. 2013); *Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de C*V, 277 F.Supp.2d 654, 667–68 (N.D. Tex. 2002)).

As before, ECN's cases are distinguishable from the facts here. First, neither *Int'l Transactions* nor *Hess* involved a bankruptcy case. Moreover, in *Int'l Transactions*, the court found consent to jurisdiction because the foreign defendant had previously filed two separate lawsuits in the forum that were directly related to proceedings the plaintiff filed in the same forum. 277 F.Supp.2d at 667–68. Finally, in *Hess,* the court found general personal jurisdiction based on

the defendant's forum contacts, not its involvement with prior litigation. 954 F.Supp.2d at 593-97.[20]

Moreover, even if this Court were to find that Airbus filing proofs of claim in the Bankruptcy Case is the equivalent of Airbus filing a lawsuit in the Bankruptcy Court, ECN's claims in the Adversary Proceeding do not relate to Airbus's proofs of claim. As previously explained, ECN's claims against Airbus in the Adversary Proceeding are for alleged negligence and products liability related to the Helicopters it owned at the time of the crash. On the other hand, Airbus's proofs of claim are for goods and/or services it provided to Debtors Heli-One Canada ULC (Claim No. 353) and Heli-One (Norway) AS (Claim No. 365) prior to the Petition Date.

Despite this, ECN argues that Airbus has "submitted itself to the specific personal jurisdiction of the Court for claims related to the Bankruptcy Cases in which Airbus filed its own proofs of claim." ECN's Original Brief [AP No. 63] at 18. The mere fact that both ECN and Airbus filed claims in the same jointly-administered bankruptcy cases involving 43 affiliated debtors[21] is insufficient for this Court to find that Airbus has consented to the Bankruptcy Court's personal jurisdiction over it for unrelated claims brought against it by ECN.

---

[20] *Praetorian Specialty Ins. Co. v. Auguillard Const. Co.*, 829 F.Supp.2d 456 (W.D. La. 2010), and *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991), are equally distinguishable, as each involved a situation where consent was found because the defendant had filed lawsuits in the same forum based on the same operative facts. Finally, *Fort v. SunTrust Bank (In re Int'l Payment Group, Inc.)*, 2011 WL 5330783 (Bankr. D.S.C. Nov. 3, 2011), did not involve a challenge to personal jurisdiction but the constitutionality of the referral of the lawsuit to the bankruptcy court. *Id.* at *1.

[21] As noted previously, ECN filed proofs of claim against CHC (Barbados), CHC Helicopter S.A., CHC Helicopter Holding S.A.R.L., 6922767 Holding SARL, and Heli-One Leasing, ULC related to the ECN Leases and CHC (Barbados)'s rejection of the ECN Leases, while Airbus filed proofs of claim against Heli-One Canada ULC and Heli-One (Norway) AS related to goods and services it provided to those Debtors. And, as noted previously, ECN's claims

Of significance, ECN does not to cite to, nor could this Court find through its own research, a single case where a court has held that a creditor/defendant submitted itself to the personal jurisdiction of the bankruptcy court by filing a proof of claim and/or participating in the underlying bankruptcy case when the subject adversary proceeding (i) was brought by another creditor of debtor asserting its own claims (not claims of the estate), and (ii) the claims asserted in the adversary proceeding were distinct from the claims the creditor/defendant sought to recover on when it filed its proof of claim against the debtor. ECN's argument simply expands the scope of personal jurisdiction in a bankruptcy case too far.

For all of these reasons, the Court concludes that Airbus's participation in the Bankruptcy Case is, standing alone, insufficient to give rise to personal jurisdiction over Airbus in a lawsuit brought against it by ECN and arising from matters unrelated to Airbus's proofs of claim.

### b. ECN Has Failed to Show a Close Nexus between Airbus's Alleged Contacts with the United States and the Claims Alleged in the Adversary Proceeding

For specific personal jurisdiction to be proper, Due Process requires (i) minimum contacts by the defendant purposefully directed at the forum state, (ii) a nexus between the defendant's contacts and the plaintiff's claims, and (iii) that the exercise of jurisdiction over the defendant be fair and reasonable. *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). The plaintiff has the burden of demonstrating specific personal jurisdiction for each claim asserted against the nonresident defendant. *Seiferth*, 472 F.3d at 274-75.

---

against Airbus in the Adversary Proceeding are negligence and products liability type claims relating to Airbus's design, manufacture, and sale of the Helicopters.

For reasons it explains below, the Court will focus on the second prong of the analysis. This is so because, even assuming that ECN could meet its burden to show that Airbus had sufficient minimum contacts with the United States,[22] ECN has failed to prove (or even allege) a nexus between those contacts and its claims in the Adversary Proceeding. ECN's failure on this point is fatal because specific personal jurisdiction is "case-linked" and grants a court only the power to hear "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918-19 (2011) ("Because the episode-in-suit, the bus accident, occurred in France, and the tire alleged to have caused the accident was manufactured and sold abroad, North Carolina courts lacked specific jurisdiction to adjudicate the controversy."); *see Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 413-16 & n.8; *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.) (specific personal jurisdiction is proper only if the cause of action arises from a particular act or activity in the forum), *cert. denied*, 506 U.S. 867 (1992).

The record before the Court is devoid of any evidence that ECN's claims arise out of or are related to Airbus's contacts with the United States. Indeed, ECN failed to address the nexus prong of specific personal jurisdiction in the Complaint and its pre-Hearing briefs. Accordingly, at the Hearing, ECN's counsel was asked to identify the nexus between ECN's negligence and products liabilities claims and Airbus's alleged contacts with the United States. According to ECN's counsel:

---

[22] Because ECN has failed to prove a close nexus between its claims against Airbus and Airbus's alleged contacts with the United States, the Court need not undertake the minimum contacts prong of the personal jurisdiction analysis. This is so because, even if every contact that ECN alleges between Airbus and the United States occurred, ECN has still failed to meet its burden as there is no nexus between such contacts and its claims.

> The nexus is that [ECN's] claims are based on diminution in value of those helicopters, due to Airbus's negligence, product liability, fraud, et cetera. And the reason I have these damages is as a result, in part, of activities that occurred in Texas, with respect to the bankruptcy of CHC…. I've lost lease income, which I'm never going to regain back, because of the grounding.

Hr'g Tr. (2/28/16) 53:12-22 (Flumenbaum) [AP No. 86].

Although not particularly clear, ECN appears to argue that the nexus between ECN's injuries and Airbus's contacts with the United States is the Bankruptcy Case and the Bankruptcy Court's order permitting the rejection of the ECN Leases by CHC (Barbados), which triggered a rejection claim against it and guarantee claims against the ECN Lease Guarantors. However, CHC (Barbados)'s decision to reject the ECN Leases did not give rise to ECN's negligence and products liability claims against Airbus. Indeed, ECN's claims against Airbus (i) existed prior to the Petition Date, (ii) are wholly independent from the Bankruptcy Case, and (iii) would exist whether the ECN Leases were rejected or not. Notably, at the Hearing, ECN's counsel was unable to cite to any portion of the record supporting ECN's argument. *Id.* 53:23-66:19 (Flumenbaum).

Accordingly, this Court concludes that it does not have specific personal jurisdiction over Airbus in relation to the Adversary Proceeding and that the Motion to Dismiss must be granted.

Before moving on to Airbus's request to dismiss the Adversary Proceeding on grounds of forum non conveniens, the Court notes that, on March 20, 2017 (nearly three weeks after the evidentiary record was closed), ECN filed with the Bankruptcy Court a post-hearing brief [AP No. 87] (the "**Post-Hearing Brief**") and a 224 page appendix [AP No. 88] (the "**Appendix**"). The Bankruptcy Court did not request post-Hearing submissions from the parties, and ECN neither requested leave of Court to file its brief nor did it request that the evidentiary record be reopened with respect to the Appendix. Although Airbus moved to strike the Post-Hearing Brief and Appendix [AP No. 90], it also admitted that this Court considering the documents would not cause

it prejudice [AP No. 92 at 2 n.2].   Thus, the Court will consider the Post-Hearing Brief and Appendix.

In its Post-Hearing Brief, ECN alleges that new facts have come to light since the Hearing showing that the Declaration of Michel Gouraud submitted at the Hearing [Airbus Ex. A] was false in several respects, including how Airbus does business in, and has contacts with, the United States.   These new allegations include that:   (i) post-Hearing, Airbus consented to the personal jurisdiction of a Texas state court in a lawsuit involving Super Puma helicopters, (ii) in early March 2017, an Airbus executive attended an industry event in Dallas where Airbus showcased its helicopters, and (iii) the same executive stated in a press release that 60 Airbus helicopter orders were placed at the event, and that Airbus reported that several "VIP customers" who are Texas residents testified to their satisfaction with Airbus products and customer service.   Post-Hearing Brief at 3.

First, the Court finds unpersuasive ECN's arguments that the Appendix contains evidence showing that the Declaration of Michel Gouraud was false.   To the contrary, the Court found portions of the Post-Hearing Brief inaccurate, often presenting documents in the Appendix from a skewed perspective.   For example, citing to a press release, ECN states: "On March 10, 2017, Mr. Faury stated that 60 Airbus helicopters orders were placed at the Heli-Expo 2017 [held in Dallas]." Post-Hearing Brief at 3.   That is incorrect. What the press release says is: " 'This year's Heli-Expo has shown that 2017 is already off to a good start for our best-selling products, with orders for about 60 helicopters including the H125, H135, H145, and H175 announced at the show,' said Guillaume Faury, Airbus Helicopters CEO."   Appendix Ex. G [88-7] at 2.   Mr. Faury did not say that 60 orders were "placed" at the Heli-Expo, and his statement did not "directly contradict" the

**Proposed Findings of Fact and Conclusions of Law**                                                **25**

other evidence in the record that Airbus sells helicopters from its place of business in France, including, most importantly, the Helicopters owned by ECN.

These types of inaccuracies aside, ECN again exclusively focuses its efforts on establishing Airbus's minimum contacts with the United States to the complete exclusion of showing a nexus between those contacts and ECN's claims. Without this nexus, specific personal jurisdiction cannot exist. Thus, as previously explained, even if every contact that ECN alleges between Airbus and the United States occurred, ECN has still failed to carry its burden of proving that specific personal jurisdiction exists over Airbus.

The Court is also unpersuaded that Airbus's decision to consent to personal jurisdiction in a Texas state court with respect to another Super Puma lawsuit shows its consent to the personal jurisdiction of the Bankruptcy Court (and, in turn, this Court) with respect to the Adversary Proceeding. Notably, neither the Debtors nor ECN is a party to the other Texas state court lawsuit, and that lawsuit is wholly unrelated to the Bankruptcy Case. The Court simply sees no relevance between a Texas state court lawsuit involving other plaintiffs and Airbus's actions in the Bankruptcy Case. To the extent that ECN raises this argument in relation to the third prong of specific personal jurisdiction (that the exercise of jurisdiction be fair and reasonable), the Court does not reach that consideration because ECN has failed to establish a nexus between its claims and Airbus's alleged contacts with the United States.

For these reasons, the Post-Hearing Brief and Appendix did not alter this Court's conclusion that it lacks personal jurisdiction over Airbus.

### C. Alternatively, the Adversary Proceeding Should be Dismissed on Grounds of Forum Non Conveniens

Because the Court has concluded that it lacks personal jurisdiction over Airbus, it need not consider Airbus's request that the Adversary Proceeding be dismissed on grounds of forum non conveniens. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947) (holding that the doctrine of forum non conveniens can never apply if there is an absence of jurisdiction). However, should an appellate court ultimately determine that this Court has both subject matter jurisdiction over the claims asserted in the Adversary Proceeding and personal jurisdiction over Airbus, the Court concludes that the Adversary Proceeding should be dismissed on the grounds of forum non conveniens.

"In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." *Id*. at 506–07. If a court determines that an adequate alternative forum exists, then it should consider the private interests of the litigant, including (i) the relative ease of access to proof, (ii) the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses, (iii) the possibility of view of premises, if view would be appropriate to the action, and (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive as well as the enforceability of the judgment. *Id.* at 508. If the private interest factors are not dispositive of the issue, the court should also consider the public interest factors, which include:

> (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007).

The defendant carries the burden of persuading the court that a lawsuit should be dismissed on forum non conveniens grounds. *Id.* at 795 (citing *In re Ford Motor Co., Bridgestone/Firestone North American Tire*, 344 F.3d 648, 652 (7th Cir. 2003)). Ordinarily, a strong favorable presumption is applied to the plaintiff's choice of forum. *Id.* at 796. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*, 330 U.S. at 508. The doctrine of forum non conveniens is appropriate in the bankruptcy context. *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824 (5th Cir.), *cert. denied* 508 U.S. 973 (1993).

Thus, the three steps of the forum non conveniens analysis are: (i) determining if an adequate alternative forum exists, (ii) considering the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum, and (iii) weighing the relevant public interest factors if the private interests are either nearly in balance or do not favor dismissal. *Marnavi Splendor GMBH & Co., KG v. Alstom Power Conversions, Inc.*, 706 F.Supp.2d 749, 754 (S.D. Tex. 2010) (citing *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147, 1165-66 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom., Pan Am. World Airways, Inc. v. Lopez,* 490 U.S. 1032 (1989)).

The Availability of an Adequate Alternative Forum. In *DTEX*, the Fifth Circuit described the availability of an alternative forum as follows:

> A foreign forum is available when the entire case and all the parties can come within that forum's jurisdiction. *Baumgart*, 981 F.2d at 835 (quoting *In re Air Crash*, 821 F.2d at 1164). A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the all the benefits of an American court. *Id.* "The substantive law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly

demonstrate that the plaintiff is highly unlikely to obtain basic justice there." *Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799, 805 (S.D. Tex. 1998) (citing *Empresa Lineas Maritimas v. Schichau–Unterweser*, 955 F.2d 368, 372 (5th Cir. 1992)).

508 F.3d at 796-97. While less favorable standards or a lower potential recovery do not render an alternative forum inadequate, there may exist "rare circumstances" where the remedy offered by a forum is "clearly inadequate," such as when "the alternative forum does not permit litigation of the subject matter of the dispute." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379–80 (5th Cir. 2002).

In its brief, ECN argues that:

> Airbus also suggests dismissal is appropriate because this matter has "no connection with Texas or the United States." (Airbus Br. 19.) That is patently false. As explained above, this adversary proceeding is closely related to the Bankruptcy Cases, in which both ECN Capital and Airbus are creditors—with each party's proofs of claim concerning the helicopters at issue in this lawsuit—and ECN Capital's claims are intertwined with the claims, liabilities, and property of the Debtors. Airbus also contends that the Court has no familiarity with the facts underlying ECN Capital's claims, but this again is false. From months of presiding over the proceedings in the Bankruptcy Cases, this Court has become familiar with the parties to this action; the factual circumstances giving rise to ECN Capital's claims; and the property that is the subject of, and will be affected by, this adversary proceeding. Airbus claims that none of the evidence relevant to ECN Capital's claims is in the U.S., but this is untrue—among the federal aviation authorities investigating the 2016 Crash is the U.S. Federal Aviation Authority, which issued from Fort Worth, Texas an Emergency Airworthiness Directive requiring the grounding of all EC225s and AS332 L2s in response to the 2016 Crash. Airbus also refers to issues of "comity" and the fact that certain of Airbus's contracts designate France as the governing law and chosen forum for disputes. International comity is an appropriate concern in a forum non conveniens analysis only if the movant shows that a true conflict of law exists, which Airbus has not done. Airbus's grounds for forum non conveniens dismissal are pure pretext.

> Airbus's real reason for wanting to escape this Court's jurisdiction and force ECN Capital to adjudicate its claims in France is clear. The government of France owns over 10% of the voting stock in Airbus's parent company, Airbus Group[.] Until recently, France held an even greater stake in Airbus Group. In 2014, France sold off a small portion of its holdings in Airbus Group. Airbus Group's Chief Executive, Thomas Enders, acknowledged that the sale was designed to reduce—

but not eliminate—the direct influence the French government held over the company, and to help Airbus Group become a more "normal" firm….

ECN's Original Brief [AP No. 63] at 23-24. Basically, ECN argues that this Court[23] is the proper court to hear the Adversary Proceeding because (i) of the allegedly close connection between the Adversary Proceeding and the Bankruptcy Case, and (ii) Airbus's ultimate parent is partially owned by France, leaving ECN unable to receive a fair trial in France. The Court disagrees on both points, as explained below.

First, as discussed above, *see* 8-12, *supra*, the Adversary Proceeding and the Bankruptcy Case are, at the very most, tenuously related due to the potential application of issue preclusion to certain claims that certain of the Debtors *may* choose to bring against Airbus in the future (and there is no guarantee those Debtors will pursue those claims). In addition, despite ECN's allegations that the Bankruptcy Court is familiar with the parties and their claims, that is simply not true in any material respect. While the Bankruptcy Court learned, at the outset of the Bankruptcy Case, of (i) the April 29, 2016 helicopter crash near Turøy, Norway, (ii) the investigation of the crash by certain civil aviation authorities in the United States, Europe, Norway, and the United Kingdom, and (iii) the civil aviation authorities' subsequent grounding of any EC225 or AS332 L2 helicopter, that is the extent of the Bankruptcy Court's familiarity with the parties and the claims asserted in the Complaint, other than what it has learned from reading the Complaint's allegations. In short, the Bankruptcy Court has no special knowledge regarding the Adversary Proceeding, the parties, or the negligence and products liability claims asserted by ECN

---

[23] Although the parties direct their arguments towards the Bankruptcy Court, including the jurisdictional challenges and the requests to dismiss or abstain, both have acknowledged that the Bankruptcy Court cannot conduct the trial of the claims asserted in the Adversary Proceeding without the parties' consent, and such consent has not been given.

in the Complaint, and any appropriate forum could quickly become familiar with the parties and the claims by reading the Complaint.

Second, and more importantly, there is nothing in the record indicating that ECN could not receive a fair trial in France. Indeed, a number of federal cases reflect the availability and adequacy of French forums in general, and ECN has cited no cases to the contrary. *See, e.g., Piper Aircraft Co.,* 454 U.S. at 252 n.18; *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606–07 (10th Cir. 1998); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429–31 (11th Cir. 1996); *Marnavi Splendor*, 706 F.Supp.2d at 755; *In re Vioxx Prods. Liab. Litig.*, 448 F.Supp.2d 741, 746 (E.D. La. 2006). Although the Court appreciates the fact that France is a minority owner of Airbus's ultimate parent, there is nothing in the record indicating that a French court or other forum could not be impartial.

Thus, this Court concludes that France is an available and adequate alternative forum.

<u>Balance of Private and Public Interest.</u>  A careful consideration of the private and public interest factors shows that France would be a much more convenient and proper forum for this litigation, as explained below.

First, it is undisputed that: (i) all parties to the Adversary Proceedings are foreign companies (Airbus is French and ECN is Canadian), (ii) the Helicopters were designed and manufactured by Airbus in France, (iii) Airbus initially sold the Helicopters to foreign CHC affiliates in France, (iii) ECN later purchased the Helicopters from CHC (Barbados), another foreign entity, for operation and sublease, (iv) there is no allegation that the Helicopters have ever been on American soil, and (v) the crash occurred off the coast of Norway. Thus, it appears that a very significant portion of the evidence relevant to ECN's claims against Airbus is located in France, including documents and witnesses related to the design, manufacture, and sale of the

Helicopters; statements made on Airbus's website or in its marketing materials; and Airbus's involvement with the investigation of the Norway accident and related Super Puma technical issues. *See* Airbus Ex. A (Declaration of Michel Gouraud) ¶ 3.

Second, the evidence not located in France is likely located elsewhere in Europe, where the crash occurred, or in Canada, where ECN's headquarters is located. Although documents in certain of the Debtors' possession and located in the United States may be subject to production and/or CHC representatives located in the United States may be called as witnesses, that does not outweigh the simple fact that the vast majority of witnesses and documents will be located abroad. The cost and burden of bringing evidence and witnesses from Europe (or other foreign countries) to Texas for a matter having no connection with Texas or the United States weighs heavily in favor of dismissal. *See, e.g., Camejo v. Ocean Drilling & Exploration,* 838 F.2d 1374, 1381 (5th Cir. 1988) ("Compulsory process for Brazilian witnesses is unavailable in a Texas forum. The cost of bringing Brazilian witnesses to Houston is very high. All the information regarding the Plaintiff's damages is in Brazil. The rig was and still is in Brazil. The local interest of Brazil in determining a case involving the death of one of its citizens is great; Texas courts have no comparable interest in the case."); *Automated Marine Propulsion Sys. v. Aalborg Ciserv Int'l A/S*, 859 F.Supp. 263, 268 (S.D. Tex. 1994) ("The only evidence before the Court indicates that almost all of the activities forming the basis of this lawsuit occurred in Sweden and other European countries . . . Obviously, therefore, access to these sources of proof will be much less burdensome in Sweden than in Galveston.").

Third, third party witnesses and documents located in Europe (or other foreign countries) related to the 2016 accident and subsequent groundings are outside the compulsory subpoena power of this Court. Even if discovery from such witnesses could be obtained under the Court's

auspices, such witnesses could not be compelled to attend trial in Texas, depriving the jury of the opportunity to assess their demeanor and veracity. *See, e.g., Gulf Oil Corp.*, 330 U.S. at 511 ("to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants"); *Seguros Comercial Americas, S.A. de C. V. v. American Pres. Lines*, 933 F.Supp. 1301, 1312 (S.D. Tex. 1996) ("conducting a substantial portion of a trial on deposition testimony…precludes the trier of fact from the important function of evaluating the credibility of witnesses").

It is likely that a French court would face far fewer of these problems. *See, e.g., In re Air Crash*, 760 F.Supp.2d at 844 n.8 (finding in lawsuit against French defendants from foreign aircraft accident that "France is also the location of significant amounts of relevant damages evidence, and it will likely be easier in France to obtain damages evidence from the other Europeans in these lawsuits.") (citing European Council Regulation 1206/2001); *Magnin,* 91 F.3d at 1429-30 ("Witnesses such as the crash investigators, eyewitnesses to the crash, the owner of the aircraft, those who maintained it, and the damage witnesses, are all in France.")). In short, this Court is likely to encounter many practical problems causing the disposition of this lawsuit to be harder, slower, and more expensive in the United States than it would be in France. Thus, the Court concludes that the private interest factors clearly weigh in favor of dismissing the Adversary Proceeding so that ECN's claims can be pursued in France.

If the private interest factors weigh in favor of dismissal, the Court may end its inquiry and decline to analyze the public interest factors. *Baumgart*, 981 F.2d at 837 (explaining that a court need not consider certain public interest factors if there is an appropriate alternative forum and the private factors weigh in favor of dismissal); *see also In re Air Crash Disaster*, 821 F.2d at 1164.

Although the private interest factors, standing alone, support dismissal, an analysis of the public interest factors adds further support.

The Administrative Difficulties Flowing From Court Congestion. Neither party addresses this factor relating to congested courts and administrative difficulties. Since neither party has argued this factor in favor of one forum over the other, the Court will not consider this factor in its analysis.

Interest of the Forum in Resolving the Controversy. As previously explained, *see* 2-4, *supra,* both ECN and Airbus are foreign entities; Airbus designed, manufactured, and sold the Helicopters in France to foreign affiliates of CHC (Barbados), who later sold them to CHC (Barbados); ECN purchased the Helicopters from CHC (Barbados) and then leased them back to CHC (Barbados) for operation overseas; and the crash at issue occurred off the coast of Norway. Moreover, nothing in the record indicates that ECN's claims arose from or are in any way related to Airbus's contacts with the United States. In fact, without the Bankruptcy Case, it does not appear that ECN would have a basis to bring its lawsuit before an American court at all. Under these facts, France clearly has the superior interest in resolving this dispute. *See, e.g., Piper Aircraft*, 454 U.S. at 260 (where aircraft accident occurred in foreign country and victims were all citizens of that country, and only the aircraft manufacturer and propeller manufacturer were American citizens, foreign forum had a "very strong interest" in the case); *Baumgart*, 981 F.2d at 837 (where aircraft was designed and manufactured in Texas, but crashed in Germany, Fifth Circuit affirmed the district court's finding that Germany had a stronger interest in the case). Thus, this factor weighs in favor of dismissal.

The Interest in Having the Trial of a Diversity Case in a Forum that is Familiar with the Law that Must Govern the Action; the Avoidance of Unnecessary Problems in Conflicts of Law,

or in Application of Foreign Law. The next two factors weigh heavily in favor of a French forum resolving this conflict.

A choice of law inquiry traditionally involves a two-step process. First, the Court must determine whether federal or state choice of law rules govern. Second, once the Court has determined which choice of law rules apply, it must apply those rules to the facts of the case to determine the appropriate substantive laws that govern the dispute. In *Klaxon*, the Supreme Court of the United States held that a federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This Court, however, has jurisdiction over the Adversary Proceeding because it is "related to" the Bankruptcy Case under 28 U.S.C. § 1334(b). Thus, the Court does not sit in diversity jurisdiction, but federal question jurisdiction, and is not bound by *Klaxon*. *See Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1244 (7th Cir. 1990) ("Since § 1334 provides federal question jurisdiction, the sovereign exercising its authority over Barron and Jeffe Attorneys is the United States, not the State of Illinois."); *Tow v. Schumann Rafizadeh (In re Cyrus II Partnership)*, 413 B.R. 609 (Bankr. S.D. Tex. 2008).

Neither the United States Supreme Court nor the Fifth Circuit has ruled on whether this Court, sitting in bankruptcy jurisdiction, is required to apply federal choice of law rules or is instead to apply the choice of law rules of the forum state. This Court need not resolve this issue here, since application of both the federal choice of law rules and the Texas choice of law rules lead to an analysis of the same factors in determining which forum's substantive law should apply to ECN's claims. *See, e.g., Woods–Tucker Leasing Corp. v. Hutcheson–Ingram Dev. Co.*, 642 F.2d 744, 749 (5th Cir. 1981) ("application of an independent federal choice of law rule and of the forum state's choice of law rule would lead to the same result, and thus 'we do not determine which

**Proposed Findings of Fact and Conclusions of Law** 35

road the trial court should have traveled to arrive at the common destination' ") (quoting *Fahs v. Martin*, 224 F.2d 387, 399 (5th Cir. 1955)).

The federal choice-of-law rule is the "independent judgment" test, which is a multi-factor contacts analysis that applies the law of the state with the most significant relationship to the transaction at issue. *MC Asset Recovery, LLC. v. Commerzbank AG*, 675 F.3d 530, 536 (5th Cir. 2012). Texas applies the Restatement (Second) Conflict of Laws' (the "**Restatement**") most-significant relationship test to decide choice-of-law issues. *Id.* The independent-judgment test and the most-significant-relationship test are the same. *Id.*; *see Tow*, 413 B.R. at 615.

ECN's claims for negligence and products liability sound in tort. Therefore, both Texas courts applying Texas choice-of-law rules and federal courts applying federal choice-of-law rules would look to §§ 6 and 145 of the Restatement. *MC Asset Recovery, LLC*, 675 F.3d at 537 ("[T]he Court need not resolve which choice-of-law test applies here. In either case, Sections 6 and 145 of the Restatement (Second) of Conflict of Laws…provide the appropriate analytical framework."); *Tow*, 413 B.R. at 619; *In re The Heritage Organization, LLC*, 413 B.R. at 462.

Section 6 of the Restatement sets forth several factors relevant to the choice of law analysis: (i) the needs of the interstate and international systems, (ii) the relevant policies of the forum, (iii) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (iv) the protection of justified expectations, (v) the basic policies underlying the particular field of law, (vi) certainty, predictability, and uniformity of result, and (vii) ease in the determination and application of the law to be applied. Restatement, § 6(2). Specifically in a tort case, § 145 of the Restatement counsels the Court to consider: (i) the place where the injury occurred, (ii) the place where the conduct causing the injury occurred, (iii) the domicile, residence, nationality, place of incorporation, and place of business of the parties,

and (iv) the place where the relationship, if any, between the parties is centered. *Id.* § 145(2). Thus, each of the factors set forth in § 145 of the Restatement is viewed in light of the more general considerations set forth in § 6 of the Restatement. When weighing the factors under § 145, "it is not the number of contacts, but the qualitative nature of those particular contacts that determines which state has the most significant relationship to the occurrence and the parties." *Asarco LLC v. Americas Mining Corp.*, 382 B.R. 49, 62 (S.D. Tex. 2007).

An application of the above factors indicates that France has the most significant relationship to the occurrence and the parties. As discussed above, Airbus is a French company with its primary place of business in France, and it designed, manufactured, and sold the Helicopters in France. On the other hand, ECN is a Canadian company with its primary place of business in Canada. It purchased the Helicopters from, and leased them back to, a foreign Debtor for sublease and operation overseas, and there is nothing in the record to indicate that the Helicopters have ever been on American soil. Indeed, ECN has failed to present any evidence (or even argument) that demonstrates a compelling connection between the Adversary Proceeding and the United States. Thus, it is highly likely that French law would apply, making a French forum the appropriate court to hear ECN's claims. Accordingly, the relevant Restatement factors weigh in favor of dismissal.

<u>Burden on the Citizens.</u> The final public interest factor, the interest in avoiding an unfair burden of jury duty on citizens in an unrelated forum, weighs in favor of dismissal. As explained by the Fifth Circuit, "[j]ury duty should not be imposed on the citizens of Texas in a case that is so slightly connected with this state." *DTEX*, 508 F.3d at 503 (citing cases). As previously noted, both parties to the Adversary Proceeding are foreign entities and ECN's claims do not arise from or relate to Airbus's contacts with the United States. Neither the parties nor the Adversary

**Proposed Findings of Fact and Conclusions of Law**                                               **37**

Proceeding have any connection to Texas, much less one that would justify burdening its citizens with jury duty.

For the reasons explained above, the Court concludes that France is an adequate and available forum for the claims asserted in the Adversary Proceeding and both the private and public interest factors strongly support dismissal of the Adversary Proceeding for forum non conveniens. Accordingly, in the event that this Court has both subject matter jurisdiction over the claims asserted in the Adversary Proceeding and personal jurisdiction over Airbus, the motion to dismiss on grounds of forum non conveniens should be granted.

### D. Alternatively, the Court Should Permissively Abstain from Hearing the Adversary Proceeding

Should the Court have both subject matter jurisdiction over the claims asserted in the Adversary Proceeding and personal jurisdiction over Airbus, and the Adversary Proceeding not be dismissed on grounds of forum non conveniens, Airbus alternatively requests that the Court permissively abstain from hearing the Adversary Proceeding. Before turning to its abstention analysis, the Court notes that both ECN and Airbus have demanded a jury trial and neither has consented to the Bankruptcy Court entering final orders in the Adversary Proceeding. Because of this, although Airbus requests that the Bankruptcy Court abstain, it is this Court that will preside over any trial in the Adversary Proceeding.[24] Accordingly, the Court interprets Airbus's request for abstention as a request that this Court, not the Bankruptcy Court, abstain.

---

[24] As noted previously, the Bankruptcy Court recommends that if the Motion to Dismiss is denied, the Motion to Withdraw Reference be granted and the reference of the Adversary Proceeding to the Bankruptcy Court be immediately withdrawn. *See* n.2, *supra*.

Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which states in relevant part

that:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

When ruling on a request to abstain, courts typically consider and balance the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if the court decides to remand or abstain; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy proceeding; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of the proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in the bankruptcy court involves forum shopping by one of parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*In re Heritage Southwest Medical Group, P.A.,* 423 B.R. 809, 815-16 (Bankr. N.D. Tex. 2010)

(listing factors). The Court will analyze these in turn.

The Effect or Lack Thereof on the Efficient Administration of the Estate if the Court

Decides to Abstain.  On March 3, 2017, the Bankruptcy Court entered an Order [BC No. 1794]

confirming the Debtors' Chapter 11 plan of reorganization (the "**Plan**").  The Plan went effective

on March 24, 2017 [BC No. 1851].  Although the applicable Debtors have retained their claims

against Airbus under the Plan, their counsel has stated on the record that they do not intend to bring

those claims in the Bankruptcy Court, if they bring the claims at all.  Thus, it appears that

abstaining from hearing the Adversary Proceeding will have no effect on the efficient

administration of the bankruptcy estates, as the Bankruptcy Case is essentially concluded. This factor weighs in favor of abstention.

The Extent to which State Law Issues Predominate Over Bankruptcy Issues. The Adversary Proceeding, which is comprised of negligence and products liability claims, does not implicate any bankruptcy laws or issues. Thus, this factor also weighs in favor of abstention.

The Difficult or Unsettled Nature of Applicable Law. Because the Adversary Proceeding is in its infancy, the Court is unaware of whether any of the negligence and products liability issues are particularly difficult or involve an unsettled application of law. To the extent that foreign law will govern the Adversary Proceeding, that will be a novel issue but not one that is necessarily difficult or that this Court is incapable of handling. Thus, the Court finds that this factor is either neutral or weighs slightly in favor of abstention.

The Presence of a Related Proceeding Commenced in State Court or Other Non-Bankruptcy Proceeding. There is no related proceeding pending in another forum, making this factor inapplicable.

The Jurisdictional Basis, if any, Other than § 1334. There is no jurisdictional basis other than 28 U.S.C. § 1334, and this Court's jurisdiction over the Adversary Proceeding is based solely on "related to" jurisdiction. Because (i) the Adversary Proceeding is before this Court only as a result of the Bankruptcy Case and its "conceivable" effect on the bankruptcy estates, and (ii) neither of the parties to the Adversary Proceeding is a debtor, this factor also weighs in favor of abstention.

The Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case. The Adversary Proceeding is not related in any meaningful way to the Bankruptcy Case. Although certain of the Debtors may hold similar claims against Airbus, they have not asserted those claims

and it is highly unlikely they will do so in the Bankruptcy Court, if they choose to assert them at all. Moreover, the Debtors did not file bankruptcy to address claims related to the 2016 crash. As reflected in the Plan, the Debtors had an enormous debt load they were unable to manage. Under the Plan, which has gone effective, much of that debt has been converted to equity, paving the way for the reorganized Debtors' operations. Thus, other than the potential application of issue preclusion to any negligence and/or products liability claims that certain of the reorganized Debtors may later choose to bring against Airbus, the Adversary Proceeding has, at best, a very remote connection to the Bankruptcy Case. Thus, this factor weighs in favor of abstention.

The Substance Rather than the Form of an Asserted Core Proceeding. The parties both agree that the asserted claims are non-core, making this factor inapplicable.

The Feasibility of Severing State Law Claims from Core Bankruptcy Matters to Allow Judgments to be Entered in State Court with Enforcement Left to the Bankruptcy Court. There are no core bankruptcy matters to sever from the Adversary Proceeding. Instead, the Adversary Proceeding is comprised of negligence and products liability claims that the Court determined can be more properly adjudicated in another court. Thus, this factor weighs in favor of abstention.

The Burden on the Court's Docket. Because the Bankruptcy Court lacks the ability to both hold the demanded jury trial and enter a final order in this non-core proceeding, it is this Court's docket that is the relevant inquiry. Although the Adversary Proceeding is certainly something this Court is capable of handling, its dockets are relatively full and the addition of this case would be an unnecessary burden, particularly given the very tenuous relationship between the Adversary Proceeding and the Bankruptcy Case. Thus, this factor also weighs in favor of abstention.

The Likelihood that the Commencement of the Proceeding in the Bankruptcy Court Involves Forum Shopping by One of the Parties. Although ECN argues that Airbus is forum

shopping in its attempt to avoid the Bankruptcy Court's jurisdiction, the opposite appears true. The Adversary Proceeding has little direct relevance to the Bankruptcy Case. Indeed, it is undisputed that the claims asserted in the Adversary Proceeding involve foreign entities, Helicopters that were designed, manufactured, and sold in France initially and outside the United States later, and a crash that occurred in Norway. But for the Bankruptcy Case and the broad scope of related to jurisdiction, there is absolutely no reason why this suit would have been brought in the Northern District of Texas. Thus, this factor weighs in favor of abstention.

The Existence of a Right to a Jury Trial. Both parties have demanded a jury trial and have not consented to the Bankruptcy Court holding that trial. However, it is this Court that would hold such a trial, mooting the need for the parties' consent. This factor is neutral.

The Presence in the Proceeding of Non-Debtor Parties. All parties to the Adversary Proceeding are non-debtors. This factor favors abstention.

Comity. As discussed above, *see* 31-37, *supra*, it is likely that French law will apply to the claims asserted in the Adversary Proceeding and that France has the most vested interested in determining those claims. Thus, comity also weighs in favor of abstention.

The Possibility of Prejudice to Other Parties in the Action. There are no other parties to the Adversary Proceeding, making this factor inapplicable.

Overall, not a single abstention factor weighs in favor of this Court hearing the claims asserted in the Adversary Proceeding. Accordingly, and in the alternative, this Court concludes that it should permissively abstain from hearing those claims.

### III.     CONCLUSION

For the reasons explained above, this Court concludes that:

- Although this Court has subject matter jurisdiction over the claims asserted in the Adversary Proceeding, it lacks personal jurisdiction over Airbus.  Accordingly, the Motion to Dismiss for lack of personal jurisdiction must be granted.

- Alternatively, if both subject matter jurisdiction over the claims asserted in the Adversary Proceeding and personal jurisdiction over Airbus exist, this Court is not the proper forum to hear those claims, and the Motion to Dismiss should be granted on the grounds of forum non conveniens.

- Further in the alternative, if both subject matter jurisdiction over the claims asserted in the Adversary Proceeding and personal jurisdiction over Airbus exist, this Court should permissively abstain from hearing those claims.

An Order consistent with these findings and conclusions will be entered separately.

**# # # END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW # # #**